KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
Assistant U.S. Attorney
California State Bar No. 235110
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-7455
Facsimile No.: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JESUS OBESO-GARCIA
aka Jesus Ogeso-Garcia,

Defendant.
`

Criminal Case No. 08CR0362-LAB

| | |
|---|---|
| District Judge: | Hon. Larry A. Burns |
| Courtroom: | 9 (Second Floor) |
| Date: | March 24, 2008 |
| Time: | 2:00 p.m. |

UNITED STATES' MOTIONS IN LIMINE TO:

(1) ADMIT DEPORTATION AUDIO TAPE OR TRANSCRIPT;
(2) ADMIT 609 EVIDENCE;
(3) EXCLUDE WITNESSES EXCEPT CASE AGENT;
(4) ADMIT A-FILE DOCUMENTS;
(5) ADMIT GOVERNMENT EXPERT TESTIMONY;
(6) PROHIBIT REFERENCE TO WHY DEFENDANT REENTERED THE UNITED STATES;
(7) PROHIBIT REFERENCE TO PRIOR RESIDENCY;
(8) EXCLUDE EVIDENCE OF AGE, FINANCES, EDUCATION AND PUNISHMENT;
(9) PRECLUDE DEFENSE EXPERT TESTIMONY;
(10) PROHIBIT COLLATERAL ATTACK ON DEPORTATION; AND
(11) RENEWED MOTION FOR RECIPROCAL DISCOVERY

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and Lawrence A. Casper, Assistant U.S. Attorney, hereby files its Motions in Limine. These motions are based upon the files and records of this case.

# I

# STATEMENT OF FACTS

## A. Statement of the Case

On February 13, 2008, a federal grand jury handed up a one-count Indictment charging Defendant Jesus Obeso-Garcia (Defendant) with: (1) one count of being a deported alien found in the United States in violation of Title 8, United States Code, Section 1326. Defendant entered a not guilty plea on February 25, 2008 before U.S. District Judge Larry A. Burns.

## B. Statement of Facts

On November 29, 2007 Border Patrol Agents Mark Moccia and Gerardo Regalado were assigned to work an area known as the S-2 corridor. While sharing information with Bureau of Land Management Ranger Brad Kent, the agents noticed a vehicle pass their location. As the vehicle passed their location, Agent Regalado saw the driver as he slowed and began to drive over the double yellow lines that divide the state route. The vehicle was a white Nissan Titan with California licenxe plate (8J08003). The driver, appeared to be scared at the sight of the marked law enforcement vehicles. Agents also observed what appeared to be an item of clothing flapping in the wind from the vehicle. Because the S-2 corridor is a well documented smuggling route, agents decided to follow the vehicle and run a licnese check. Through that check, it was determined that the vehicle was a rental car. As they followed the vehicle, agents observed that the vehicle continued to cross over the double yellow line and Agent Regalado saw that the driver was repeatedly checking his rearview mirror for the location of the officers. At that point, Ranger Kent initiated a vehicle stop with Agents Regalado and Moccia as his back up.

The time was approximately 11:30 a.m. and the location was on S-2 at mile marker 30. As Agent Regalado and Ranger Kent approached the vehicle, multiple persons were seen attempting to conceal themselves under a black tarp. The officers identified themselves as federal agents and questioned the driver and five other individuals in the vehicle. Each of those individuals, including one later identified as Defendant Jesus Obeso-Garcia, admitted to being a citizen of Mexico with no legal right to enter or remain in the United States. Defendant was transported to the Murrieta Border Patrol Station for further processing. A records check revealed a criminal and immigration

history.

**C. Defendant's Post-Arrest Statement**

Defendant was read his Miranda rights as witnessed by Senior Patrol Agent J. Campbell at approximately 4:43 p.m. Defendant waived his rights and provided a statement. Defendant stated that he crossed into the United States from Mexico on November 29, 2007 in the early morning hours near Mexicali, Mexico. He stated that his final destination was to be San Bernadino, California. Defendant admitted to being a citizen of Mexico, having been born in Sinaloa, Mexico. Defendant also admitted to having been previously deported, excluded or removed from the United States. Defendant also admitted that he knew it was illegal for him to return to the United States and that he had not applied for permission to return to the United States.

**2. Defendant's Criminal History**

Defendant, who is 36 years old, has amassed a considerable criminal history:

| | | |
|---|---|---|
| 10/21/1992 CAMC Hemet | 1320(A) PC - Fail to Appear (misdo) | probation/jail |
| 6/3/1997 CAMC Riverside | 11377(A) HS - Possess Cont subst (misdo) | 30 days jail/36 mos probation |
| 2/11/1998 CASC Riverside | 273.55 PC - Inflict Corporal Injury to spouse/cohab | 2 years jail/36 mos probation |
| 5/10/2002 CASC Hemet | 12021(A)(1) PC-Felon/Etc. Possess Firearm | 3 years jail |
| 11/7/1994 CAMC Hemet | 273.5 PC - Inflict Corporal Injury to spouse/cohab | 15 days jail/36 mos probation |

**3. Defendant's Immigration History**

Defendant has been apprehended for being in the United States illegally on at least four prior occasions. He was ordered deported on September 11, 2003, after a hearing before an immigration judge. He was most recently removed from the United States on May 1, 2006.

## II

## MOTIONS IN LIMINE

### A. THE COURT SHOULD ADMIT THE AUDIO TAPE OR TRANSCRIPT OF THE DEPORTATION HEARING

Defendant appeared before an immigration judge on September 11, 2003. This event is recorded in both the order issued by the immigration judge and also by the audio tape of the hearing. In the audio tape, Defendant admits his Mexican citizenship and the fact that he had no authorization permitting him to be present in the United States. The immigration judge ordered Defendant deported. The United States intends to play this tape and provide a certified transcript of the hearing as part of its case in chief. Defendant's admissions and the immigration judge's order tend to prove elements of the charged crime, namely, Defendant's alienage, the lack of consent to reenter, and a previous order of deportation. Accordingly, the tape is relevant evidence and should be admitted. See Fed. R. Evid. 401.

The United States' witnesses will testify that these tapes are regularly compiled at immigration hearings, which are civil proceedings involving the government. Rule 803(6) and 803(8) of the Rules of Evidence permit the admission of such statements as records of regularly conducted activity and public records, respectively. See Fed. R. Evid. 803(6), 803(8). Both rules apply to data compilations of any form, which includes audio tapes. See id.

### B. THE COURT SHOULD ADMIT 609 EVIDENCE

Federal Rule of Evidence 609 provides that evidence that an accused has been convicted of a crime punishable by imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused." United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004). In United States v. Cook, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc), overruled on other grounds, Luce v. United States, 469 U.S. 38 (1984), the Ninth Circuit set forth a five-factor test for balancing the relative probativeness and unfair prejudice of a prior conviction. Under this five-factor test, this court should consider: (1) the impeachment value of the prior crime; (2) the temporal relationship between the conviction and the defendant's subsequent criminal history; (3) the similarity between the past and

the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. Id. This court need not analyze each of the five factors explicitly. See United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000).

If Defendant chooses to testify, his credibility will be a central issue in the case and Defendant's character for honesty is a factor that should be carefully weighed by the Court. The importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called to testify only if he intended to claim that: (1) he was involuntarily brought to this country, (2) he was never actually deported, (3) he was not an illegal alien, or (4) he had received the permission to re-enter the United States, even though the Department of Homeland Security has no record of such permission being granted. If Defendant chooses to testify at trial, the United States should be allowed to demonstrate Defendant's lack of trustworthiness by utilizing his prior felony convictions for impeachment purposes.

Accordingly, the United States should be allowed to introduce evidence of Defendant's prior felony convictions under Rule 609 if Defendant elects to testify at trial. The felony convictions include a May 24, 2002 conviction for felon in possession of a firearm for which Defendant received a sentence of 3 years in jail and a February 11, 1998 conviction for inflicting corporal injury to spouse/cohabitant for which Defendant received a sentence of two years in jail. The United States has notified Defendant of its intention to use these convictions for impeachment purposes.

**C. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**D. THE COURT SHOULD ADMIT A-FILE DOCUMENTS**

1. A-File Documents are Admissible as Public Records or Business Records

The United States intends to offer documents maintained by the former Immigration and Nationalization Service and current Department of Homeland Security regarding Defendant. The agency maintains an "A-file" or "Alien-file" on Defendant, which contains documents reflecting most of Defendant's immigration encounters. The United States moves to introduce "A File" documents to establish Defendant's alienage, prior deportation, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A File." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. Loyola Dominguez argued that admission of the documents violated the rule against hearsay and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

Loyola-Dominguez is simply among the more recent restatements of the public-records and business-records rules. Courts in this Circuit have consistently held that documents from a defendant's immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage and prior deportation. See United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence as absence of a public record); United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (holding warrant of deportation

admissible to prove alienage); United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995) (district court properly admitted warrant of deportation as public record); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record).

2. A Certificate of Non-existence Does not Violate the Confrontation Clause

The United States moves to introduce a Certificate of Non-existence of Record ("CNR"), prepared by an authorized official at the Department of Homeland Security and certifying that there are no records in any of the Department's databases, files, or archives that Defendant has ever applied for, or been granted, permission to reenter the United States following his deportation. The Ninth Circuit has held that a CNR is not "testimonial" within the meaning of Crawford v. Washington, 124 S. Ct. 1354 (2004) and therefore that its admission into evidence does not violate the Confrontation Clause of the United States Constitution. See United States v. Cervantes-Flores, 421 F.3d 825, 831-33 (9th Cir. 2005); Sotelo, 215 F.3d 1039, 1042-43.

**E. THE COURT SHOULD ADMIT EXPERT TESTIMONY**

The United States moves to admit testimony of a fingerprint expert to identify Defendant as the person who was previously deported from the United States and who was found in the United States on November 29, 2007.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. See United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704. Here, the fingerprint expert's testimony will assist the trier-of-fact in determining whether the deportation and attempted entry evidence relate to the individual in the courtroom. Defendant has been provided notice of the United States' expert, and a copy of her curriculum vitae.

Because the evidence goes to the essential question of identity, this expert testimony should be admitted.

**F. THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of why Defendant violated Section 1326 is patently irrelevant to the question of whether he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. Here, the reason why Defendant reentered the United States, and his belief that he was justified in doing so, is irrelevant to whether he violated Section 1326. Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is irrelevant.

The case of United States v. Komisaruk, 885 F.2d 490 (9th Cir. 1980), is illustrative. Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. Id. at 491. On appeal, she argued that the district court erred in granting the government's motions *in limine* to preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," id. at 492, and the Ninth Circuit affirmed. Similarly here, the reason why Defendant reentered the United States and his belief that he was

entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.

**G. THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY**

The Court should preclude Defendant from introducing evidence at trial of any former residence in the United States, legal or illegal. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993) overruled on other grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996), the district court granted the United States' motion *in limine* to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. The Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. Id. Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion in limine to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to introduce evidence of the involuntariness of her initial residence; her continuous residency since childhood; her fluency in the English language; and the legal residence of immediate family members. Id. at 712. The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." Id. The court also noted that admission of the evidence would run "contrary to the intent of Congress," because "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." Id. Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries." Id. (emphasis added).

Accordingly, evidence to residency, U.S. citizen family members, and difficulty of surviving in Mexico should be precluded.

**H. THE COURT SHOULD EXCLUDE EVIDENCE AND ARGUMENT REFERRING TO DEFENDANT'S AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

"Evidence which is not relevant is not admissible," (Fed. R. Evid. 402), and the jury should "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." Ninth Cir. Model Jury Instructions, § 3.1 (2003). Here, it is anticipated that Defendant may attempt to introduce evidence about his family circumstances (e.g., age, health, finances, education and potential punishment). This information is irrelevant to this case and should be excluded; indeed, such evidence is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification.

Information about penalty and punishment draws the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromise verdicts, and confuses the issues to be decided. See United States v. Olano, 62 F.3d 1180, 1202 (9th Cir. 1995); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudice, or sympathy." § 3.1 (2000 Edition). Any argument or reference to the above-described circumstances would be an improper attempt to have the jury unduly influenced by sympathy for the defendant and prejudice against the United States.

**I. THE COURT SHOULD PRECLUDE ANY EXPERT TESTIMONY BY DEFENSE WITNESSES**

The United States has requested reciprocal discovery. The United States is permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. Defendant has provided neither notice of any expert witness, nor any reports by

expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

**J. THE COURT SHOULD PROHIBIT ANY COLLATERAL ATTACK ON DEFENDANT'S DEPORTATION**

The lawfulness of Defendant's prior deportation order is not an element of the offense in a prosecution under 8 U.S.C. § 1326. Therefore, any question about the lawfulness of the deportation should not be submitted to the jury for determination.

In United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996), the Ninth Circuit overruled its prior decision in United States v. Ibarra, 3 F.3d 1333 (9th Cir. 1993), insofar as it held that the lawfulness of a prior deportation is an element of the offense under § 1326. The Alvarado-Delgado Court noted that while some jurisdictions hold that a prior deportation is an element of the offense if the deportation is "lawful," the statute itself contains no such limitation, stating simply "[a]ny alien who has been arrested and deported or excluded or deported," 8 U.S.C. § 1326(1), "will be guilty of a felony if the alien thereafter, enters, attempts to enter, or is at any time found in the United States." 8 U.S.C. § 1326(2). In fact, the Ninth Circuit has held that all § 1326(b)(2) requires is the alien's "physical removal." See, e.g., United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003).

Because the lawfulness of the prior deportation is not an element of the offense under § 1326, Defendant does not have a right to have the issue determined by a jury. Moreover, Defendant has not challenged the lawfulness of his deportation.

**K. UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

As of the date of these motions, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

Dated: March 4, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*Lawrence A. Casper*
LAWRENCE A. CASPER
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA, Plaintiff, v. JESUS OBESO-GARCIA, Defendant.

Criminal Case No. 08CR0362-LAB

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, LAWRENCE A. CASPER, am a citizen of the United States over the age of eighteen years. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893. I am not a party to the above-entitled action. On this date, I caused service of:

UNITED STATES' MOTIONS IN LIMINE on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies them:

1. Siri Shetty, Esq.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of March 2008.

/s/ Lawrence A. Casper
Lawrence A. Casper